(66 Misc. Rep. 425.)

## PEOPLE v. REED.

(Supreme Court, Special Term, Onondaga County.    February, 1910.)

1. INSURANCE (§ 691*)—POWERS OF SUPERINTENDENT OF INSURANCE—EXAMINATION OF COMPANIES.

   Laws 1909, c. 300, adding section 63 to the insurance law (Consol. Laws, c. 28), extended the jurisdiction of the superintendent of insurance to insurance corporations of every character, and authorized him to examine the affairs, and question under oath the officers of any benefit society, or co-operative insurance corporation, notwithstanding section 57 had theretofore exempted such societies and corporations from such examination.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 691.*]

2. PERJURY (§ 7*)—WHAT CONSTITUTES—FALSE SWEARING OF INSURANCE OFFICER.

   The false swearing of any officer of any benefit society or co-operative insurance corporation on any examination by the superintendent of insurance, under Laws 1909, c. 300, adding section 63 to the insurance law

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date,. & Rep'r Indexes

(Consol. Laws, c. 28), upon a subject material thereto, constitutes "perjury."

[Ed. Note.—For other cases, see Perjury, Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 6, pp. 5305–5310; vol. 8, p. 7751.]

3. PERJURY (§ 12*)—INDICTMENT—SUFFICIENCY.

An indictment for perjury, in an examination before the superintendent of insurance, is valid, though the fact as to which such perjury is alleged is the belief or opinion of the witness.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 55–61; Dec. Dig. § 12.*]

Indictment of Iram C. Reed for perjury. Demurrer to indictment overruled.

George H. Bond, Dist. Atty., and Alfred Hurrell, for the People.

William Nottingham and Ceylon H. Lewis, for defendant.

ANDREWS, J. The defendant was indicted by the grand jury of Onondaga county for perjury. To this indictment various objections have been taken.

First. The defendant was the president of a fraternal beneficiary society. The statements alleged to have been false were made upon his examination, under oath, before an examiner of the superintendent of insurance of this state. Concededly to support the indictment the examination must have been authorized by law. Otherwise the evidence given was a mere voluntary statement. It is claimed that it was not so authorized.

Article 1 of the insurance law (Laws 1909, c. 33 [Consol. Laws, c. 28]) creates the insurance department of the state and its superintendent. It then contains various provisions regulating insurance corporations, foreign and domestic. Among them is section 39. This permits the superintendent, personally, or through an examiner named by him, to examine under oath any officer of an insurance corporation as to the condition of his company. On its face this provision would be applicable to insurance corporations of every kind. Its effect, however, is subsequently limited. Section 57 provides that none of the provisions of the first article shall apply to fraternal beneficiary societies or to town and county co-operative insurance corporations. Likewise section 233 of article 7, relating to fraternal beneficiary societies, provides that such societies shall be exempt from the provisions of the other insurance laws of the state and shall be subject only to the provisions of this article and such provisions of article 1 as may be specially applicable thereto. Therefore, as the law stood originally, the superintendent had no authority to examine, under oath, the officers of a fraternal beneficiary society. The powers, rights, and duties of such a society and its officers were defined exclusively by article 7. Such a corporation was bound to make an annual report. The superintendent could address to it any additional inquiries he might deem material, and the officers must reply, in writing, under oath; and it was subject to visitation and inspection by him. Section 237. It

was also prohibited from making a contract of reinsurance without his consent. Section 240.

This being the condition of affairs, chapter 300 of the Laws of 1909, known as "An act to amend the insurance law relative to proceedings against and liquidation of delinquent insurance corporations," was passed. It amended article 1 of the insurance law (Consol. Laws, c. 28) by adding a section thereto known as section 63, and repealed all acts or parts of acts inconsistent with it. This new section provided that it should "apply to all domestic corporations, associations, societies and orders to which any article of this chapter is applicable, anything as to any such corporations, associations, societies or orders provided in this article to the contrary notwithstanding; and the words 'corporation' or 'corporations' herein shall also include all such associations, societies and orders." This statute, therefore, by its terms, clearly refers to all corporations of every kind engaged in the insurance business, including fraternal beneficiary societies, organized under article 7, and town and county co-operative insurance corporations, organized under article 9. The provision that the law is applicable to every kind of domestic insurance corporation, anything provided in article 1 to the contrary notwithstanding, refers to section 57, which provided, as has been said, that the provisions of article 1 do not apply to corporations of these two classes. The new statute provided that where any such corporation (a) was insolvent; (b) refused to submit its books and papers to the inspection of the superintendent; (c) has neglected to make good any deficiency in its capital, if it is a stock corporation, or in its reserve, if it is a mutual corporation; (d) has transferred its property by a contract of reinsurance without the consent of the superintendent; (e) is found, after an examination, to be in such a condition that its further transaction of business would be hazardous to its policy holders, to its creditors or to the public; (f) has willfully violated its charter or any law of the state; and (g) whenever any officer thereof has refused to be examined, under oath, touching its affairs—the superintendent might apply to the Supreme Court for an order permitting him to take possession of its property and conduct its business.

The question to be determined, therefore, is whether this act granted to the superintendent a new remedy where the rules already in force were violated, or whether it conferred upon him additional powers and duties. Was it the intention to extend a supervision and control over beneficiary and like societies similar to that already given him over mutual and stock companies?

It may be observed, at the outset, that there is nothing in the nature of beneficiary or town and county co-operative insurance corporations which would render it inappropriate to confer upon the superintendent power to examine them or their officers. There is no real reason why a distinction should be made in this respect between them and mutual or stock corporations. On the contrary, if the intention was to grant this authority, the public good requires the statute in regard thereto to be liberally construed.

Next, the Legislature seems to have taken great care that the law should be broadly applicable. It applies to all domestic corporations,

associations, and orders, anything provided in article 1 to the contrary notwithstanding. The word "corporation" is to include all such associations. It then continues: "Wherever such corporation is insolvent;" whenever such corporation is found, after examination, to be in an unsafe condition; whenever any officer of such a corporation has refused to be examined under oath touching its affairs—then the superintendent may take action. Does this impliedly give to the superintendent power to make such an examination—to question officers under oath? Or does it simply mean that, where he already has such power, he may apply to the court for further relief?

My belief is that it was the intention of the Legislature to extend the jurisdiction of the superintendent to insurance corporations of every character and to confer upon him the powers necessary for that purpose. Any other interpretation would make the statute largely meaningless. It would render inexplicable the care with which the new law is made to apply to every kind of insurance corporation and association, notwithstanding the exceptions contained in section 57. Take, for instance, town and county co-operative insurance.corporations regulated by article 9. In so many words the Legislature says the act applies to them. Over them previously the superintendent had no control whatever. No annual report was filed with him. It was filed with the town or county clerk and with the Secretary of State. The superintendent had no right to visit, inspect or examine. And it was expressly provided that such a corporation was not required to make any report or statement, nor perform any requirement not contained in article 9 or in the by-laws of the corporation. Section 273. Therefore, if the defendant's argument is to be adopted, chapter 300 of the Laws of 1909, in spite of its statement that it applies to such a corporation, makes slight changes in its status.

The superintendent may apply to the court if it is insolvent. How is he to discover that fact if he may not examine into its affairs? He may so apply if it has willfully violated its charter or the laws. The same question may be asked. He may also apply if a corporation has refused to submit its books to his inspection; has made a contract of reinsurance without his consent; is found after examination to be in an unsafe condition; or when its officers refused to be examined under oath. None of these things was required by article 9. So such a corporation is unaffected, unless power to visit, to inspect, to examine is conferred by the statute. To a large extent the same thing may be said with regard to a fraternal society organized under article 7. It is true that it was required to file an annual report with the superintendent; that he was authorized to address additional inquiries to it which must be answered by its officers, in writing, under oath; and that it was subject to his visitation and inspection. Therefore, without additional powers, he might be able to determine whether it was insolvent, whether it had reinsured without his consent, or whether it had violated its charter or the laws. But it would be difficult to do so.

Chapter 300 was a statute intended to protect policy and certificate holders and the public. Possibly it might have been more carefully drawn. But where it says that it uses the word "corporation" as referring to beneficiary societies, and that, if such a society is found aft-

er examination to be unsafe, then a remedy is provided, it means that such an examination may be had. When it says that if "any officer thereof"—of such society—"refuses to be examined under oath," it confers the power to request such officer to submit to examination. Whether anything further is implied, whether the superintendent can compel the officers to submit to such an examination, if they refuse, whether he has any remedy other than that provided by this section, need not be determined here. But where such a demand is made and the officers, for the purpose of preventing the management of the society leaving their hands, appear and submit, the statute authorized the superintendent to administer the oath and to conduct the examination; and an indictment for perjury because of answers made on the examination will be sustained.

Second. The subject of the investigation was whether a certain contract between the defendant and the People's Mutual Life Insurance Association and League was a valid and binding contract; whether any amount was due to the defendant thereon, and, if so, how much. The indictment alleges that Mr. Reed stated that he thought such contract was valid and a liability, and that the corporation was legally liable thereon to him, and that the amount due him was over $30,000. It is said that an indictment for perjury cannot be sustained where the evidence given was of such a character. I think this is an error. It may be difficult to prove, but it is perjury for a witness to testify that he thinks or believes a certain thing to be true when he does not so think or believe it.

Third. The indictment charges that the question as to the validity or invalidity of such contract was a material matter in the examination. It does not state that Mr. Reed's belief as to whether it was valid or not was material. It is said that this a fatal defect.

If the fact as to which testimony is given is material, than that testimony is also material if it has a tendency to prove or disprove that fact—if it legitimately may influence the court on the question at issue. If the inquiry were as to whether A. had a conversation with B., B.'s statement that he did not remember would be material. It would not be necessary to aver that whether B. remembered or not was material. It would be enough to state that the question of the conversation was material. Then the court could draw its own conclusions from the facts appearing on the face of the indictment. So, here, the matter of the validity of the contract between the corporation and Mr. Reed being said to be material, Mr. Reed's statement that he believed it valid was also material.

Other objections of a less grave character are made; but none of them seems to be substantial.

I must overrule the demurrer to the indictment.

Demurrer overruled.